WESTERN LIFE INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant, *v.* GEORGE B. CHAPMAN *et al.*, Defendants.—(WILLIAM H. CHAPMAN, Defendant-Appellee.)

(No. 61529; ■■■■■■■■)

First District (4th Division)—August 13, 1975.

Epton & Druth, Ltd., of Chicago, for appellant.

August A. Grundei, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The plaintiff, Western Life Insurance Company of America, brought this suit in the Circuit Court of Cook County against the defendants, George and William Chapman, to recover premiums on life insurance policies collected by the defendants.

The issue for review is whether the judgment of the trial court was against the manifest weight of the evidence.

Western Life Insurance Company of America (Western) is a Missouri corporation which is qualified to do business in the State of Illinois and to issue life insurance contracts in Illinois. In 1964, George Chapman became a general agent for Western, and in January of 1966, George's brother, William became a Western agent under George's general agent's agreement.

Although George was the general agent, William had his own agent's agreement with Western, and they operated the business under the joint trade name of the Western Life Agency. The Western Life Agency's checking accounts were joint accounts in the names of George and William Chapman, and they filed partnership returns which indicated the income was divided equally.

In 1970, George and William opened a joint trade-name account with the Beverly Bank, entitled the Western Life Agency Premium Trust Fund Account. Premium funds were reported to Western as follows: Each month Western would send to the Chapmans a duplicate list of all policyholders which included the policy number and monthly premium due. The Chapmans would delete policies which were cancelled or lapsed, add any reinstatements, and remit the copy to Western with a check drawn on the Premium Trust Fund Account for the net premium due Western (gross premiums collected, less the applicable agent commission).

Prior to December, 1970, George became delinquent in remitting premiums, and to cure the delinquency, executed an addendum to his agent's contract providing for the payment of the $16,840.93 deficiency. By May of 1972, there was again a delinquency in reporting and remitting premium payments. In April and May of 1972, William had drawn eight checks on the Premium Trust Fund Account at the Beverly Bank, payable to the Western Life Insurance Company of America totaling $12,630.41. Before these checks cleared the banks, George, with William's knowledge, withdrew substantially all the funds from the Premium Trust Fund Account and deposited them in a personal account. When the checks were presented to the Beverly Bank, they were dishonored. After the funds were withdrawn, the account was closed and a new account was opened in the Hyde Park Bank. Thereafter, William deposited Western premiums in that account even though it was not a premium trust fund account.

On or about June 20, 1972, Western terminated the agent agreements of both George and William Chapman, and on September 8, 1972, George ceased to be qualified to act as an insurance agent in Illinois. Nevertheless, William continued to operate the Western Life Agency and continued to collect premiums on both his and George's accounts

until May of 1973. A total of $24,747.48 was collected, $12,296.75 from William's accounts and $12,450.73 from George's accounts. None of these funds was reported to Western.

On February 22, 1973, Western instituted this action seeking the following relief: recovery of the $12,630.41 in dishonored checks, the balance due under the December, 1970 agreement from George, injunctive relief, and recovery of the $24,747.48 of premiums which had not been reported.

In October of 1974, this matter was called for trial against both defendants. George Chapman failed to appear and the plaintiff proceeded to trial against William Chapman. At the close of the case, a default judgment was entered against George, but the court entered judgment for William, stating that the evidence did not support the allegations in the complaint. The plaintiff appeals from that judgment.

On appeal the plaintiff argues that William Chapman was a fiduciary with respect to Western and was accountable for the premium funds William collected on both his and his brother's accounts. William argues he was merely an employee of the Western Life Agency which was owned by his brother as a sole proprietorship, and any wrongdoing by his brother cannot be imputed to him.

Section 505 of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, § 1065.52) and Rule 31.13 of the Illinois Insurance Department Rules & Regulations expressly provide that an insurance agent is a fiduciary and that premium funds cannot be commingled or converted to one's own use.

Section 505 provides in relevant part:

> "That portion of all premiums or monies which an agent, broker or solicitor collects from an insured and which is to be paid to a company, its agents or his employer because of the assumption of liability through the issuance of policies or contracts for insurance, shall be held by the agent, broker or solicitor in a fiduciary capacity and shall not be misappropriated or converted to his own use or illegally withheld by the agent, broker or solicitor."

Rule 31.13 provides in relevant part:

> "Premium Funds are to be held by a licensee in a fiduciary capacity and shall not be misappropriated, converted or illegally withheld by the licensee.
>
> All premium Funds shall be segregated and not in any manner commingled with any other funds of the licensee, excepting the licensee's commission portion."

It is clear that under the Insurance Code William Chapman was

a fiduciary with respect to Western and was responsible for the funds which he collected and failed to remit regardless of his relationship to his brother. By continuing to collect George's accounts even after George surrendered his license to act as an agent in Illinois, William became responsible for the premiums he collected. As a licensed insurance agent he collected a total of $24,747.48 in premiums and turned it over directly to his brother or placed the money in an account which was not a premium trust account. He was aware that account was used to finance the operations of the business and contained funds from other sources. This was a direct violation of his duty under the Code. (*Robert P. Butts & Co. v. Estate of Butts* (1970), 119 Ill.App.2d 242.) In the case of *Twin City Fire Ins. Co. v. Green* (8th Cir. 1949), 176 F.2d 532, 535, the court stated:

> "In fact, even without such a special statutory provision as exists in Missouri, the law generally has recognized an insurance agent, charged with the duty of collecting premiums and not granted the right by his contract to use the funds personally, as having prima facie a fiduciary responsibility. See 16 Appleman, Insurance Law and Practice, § 8786, pages 224, 225; *In re Mason Co.*, D.C. Conn., 254 F. 164."

Also see Harnett, Responsibilities of Insurance Agents and Brokers § 807 (m. Bender 1974).

■■ With respect to the funds drawn out of the Premium Trust Fund Account by George Chapman, the evidence shows that William was a partner in the business and must be held jointly liable with his brother. In their answer to the complaint the defendant admitted the allegations contained in paragraphs six and seven:

> "6. Thereafter the individual Defendants did operate under the trade name Western Life Agency at 7121 South Yates, Chicago, Illinois, and did solicit insurance business as agents of Plaintiff on behalf of Plaintiff.
>
> 7. Pursuant to the agency authority created by and under the agreements between plaintiff and Defendants, the Defendants individually and collectively under the name Western Life Agency did collect insurance premiums for policies of insurance issued by the Plaintiff, which premiums were received by Defendants solely for the purpose of maintaining in force the insurance policies issued by the Plaintiff."

An admission in an answer is binding on the party making it and as to such party, it is conclusive as to admitted fact. *Coss v. Magdziasz* (1965), 65 Ill.App.2d 40; *Severy v. McDougall* (1913), 259 Ill. 272.

The evidence shows that George and William filed partnership tax

returns, dividing the profits equally. After William wrote the checks totaling over $12,000 on the Premium Trust Fund Account, he and George jointly consulted with an attorney about whether the funds might be drawn out of the account.

■■ Finally, after the agency of both George and William was terminated by Western, William continued to share receipts with George even after he had ceased to be qualified as an insurance agent for any company in Illinois. We believe the pleadings and the evidence adduced at trial are conclusive that William and George Chapman were partners and that William is jointly liable for the $12,630.41 drawn out of the Premium Trust Fund Account by George.

■■ The contention by the defendant that the plaintiff is estopped from proceeding against William because of the judgment against George is without merit. He states that the cause of action against William was extinguished and merged with the judgment against George for the full amount of the money owed. This argument is not persuasive because in this case there was only one cause of action against two defendants, and the court did not enter the judgment against George prior to finding in favor of William. Therefore, there can be no question of a prior suit.

The court erred in not entering judgment against William for the full amount entered against George. Therefore we are reversing the judgment of the Circuit Court as to William and entering judgment here against William in the amount of $37,377.89 which is the total of $24,747.48 in unreported premiums and $12,630.41 in dishonored checks.

Reversed and judgment entered here for $37,377.89.

BURMAN and JOHNSON, JJ., concur.