FRANKIE MAE DIXON, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO, Defendant-Appellee.

First District (3rd Division)    No. 80-2816

Opinion filed October 21, 1981.—Rehearing denied November 19, 1981.

454

Terrance E. Leonard, John W. Lally, and Andrew A. Ziemba, all of Chicago, for appellant.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Frank W. Nagorka, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Frankie Mae Dixon, brought this action for personal injuries charging the defendant city of Chicago with negligently failing to maintain the streets and sidewalks on a certain corner in the city. Plaintiff appeals from an order of the trial court granting summary judgment in favor of the city based on its finding that the city had no duty to maintain the property involved.

On January 30, 1974, plaintiff was walking west on the north side of Chicago Avenue in the city. As she reached the east curb of Pulaski Road a lunging dog caused her to step back onto a defect in that curb. She fell, injuring her knee.

Plaintiff's complaint alleged that she had fallen and injured herself on a corroded "street and sidewalk" which the city had negligently failed to maintain safely. The city answered by denying plaintiff's allegations of negligence but admitting that it "owned, maintained, managed and controlled, and held out to the public as being reasonably safe for pedestrian travel, certain public streets improved with public sidewalks, including the northeast corner of Chicago Avenue and Pulaski Street * * *."

At plaintiff's deposition on February 23, 1979, plaintiff revealed that the defect which caused her injuries was actually on the curb rather than on the sidewalk or street. She described the precise location of the

defective curb to be on the east side of Pulaski in the crosswalk area just north of Chicago Avenue.

The city thereafter filed a motion for summary judgment claiming that the defective curb was under the maintenance jurisdiction of the State of Illinois and that the city had no duty to maintain it. State responsibility for the maintenance of the curb was asserted by Joseph Koster, district safety and claims manager for the Illinois Department of Transportation, first by affidavit and later at an evidentiary hearing.

On appeal plaintiff initially contends that because the city, in its answer to the complaint, admitted that it "owned, maintained, managed and controlled the streets and sidewalks" in question, it is now estopped from denying control over the curb at that location.

■■■ When a statement of fact is admitted in the pleadings it becomes a judicial admission which binds the party making it. The other party is thereafter not required to introduce any evidence in support thereof. (*State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718; *Western Life Insurance Co. v. Chapman* (1975), 31 Ill. App. 3d 368, 334 N.E.2d 806, *cert. denied* (1976), 424 U.S. 927, 47 L. Ed. 2d 337, 96 S. Ct. 1140; *Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.) The city made such an admission of fact as to its ownership of and control over the streets and sidewalks on the northeast corner of Chicago and Pulaski. It did not, however, admit ownership of and control over the curb. Although an admission of fact carries with it an admission of other facts necessarily implied therefrom (*Bennett v. Benton State Bank* (1928), 249 Ill. App. 539), an admission should not be construed as being broader than the allegations or facts admitted. (*Southern Illinois Conference of the Methodist Church v. City of Edwardsville* (1975), 33 Ill. App. 3d 642, 342 N.E.2d 315; *Affiliated Realty & Mortgage Co. v. Jursich* (1974), 17 Ill. App. 3d 146, 308 N.E.2d 118.) Thus a party is not bound by mere permissible inferences of facts admitted. In the present case, the city's admission of ownership of and control over the streets and sidewalks is not an admission that it owns and controls the curb. The trial court did not err in allowing the city to show that the State, rather than the city, owns and controls the curb in question.

Plaintiff next contends that summary judgment was improper because an issue of material fact, whether or not the State exclusively owns and controls the curbs in question, is yet unresolved.

Section 4—203 of the Illinois Highway Code (Ill. Rev. Stat. 1979, ch. 121, par. 4—203) provides in pertinent part:

"The Department [of Transportation] may * * * add additional highways to the State highway system by * * * taking over highways from * * * the municipal street system * * *. When-

ever any part or portion of any such highway which is situated within the corporate limits of any municipality is hereafter or has heretofore been taken over, the Department shall have exclusive jurisdiction and control over * * * such highway * * * which has been taken over by the Department, and for the maintenance of which the Department is responsible * * *."

The State Department of Transportation publishes a listing of streets within the city of Chicago which are owned and maintained by the State of Illinois. The relevant portion of this listing was attached to the city's motion for summary judgment. It indicates State ownership of and maintenance responsibility over Pulaski Road and curbs from 28 feet north of the center line of Chicago Avenue, in a northerly direction, to 20 feet south of the center line of Augusta Boulevard. Therefore, if the defective curb in question is on Pulaski Road at least 28 feet north of the center line of Chicago Avenue, it is on State property. Other exhibits disclose this to be the fact. A map prepared for pavement marking purposes by the city department of streets and sanitation, filed by the city, showed Chicago Avenue at Pulaski Road to be 56 feet wide from curb to curb. Therefore, city control ends and State control commences at the northern edge of Chicago Avenue. All of Pulaski Road and curbs which extend north of Chicago Avenue are part of the State highway system. Plaintiff's photographs of the defective curb, attached to her response to the city's motion for summary judgment, also disclose that the curb was located on the east side of Pulaski Road in the crosswalk area north of Chicago Avenue. This is clearly State property. Consequently, the trial court was correct in finding that no material question of fact remains as to ownership and control of the defective curb.

Plaintiff also contends that even if the defective curb was on State property, the city, as a matter of law, had a concurrent obligation to maintain it.

This position is directly contrary to the unambiguous language of the statute which authorizes State control. As we have stated, the Illinois Highway Code gives the State "exclusive jurisdiction and control over" municipal streets taken over by the State pursuant to section 4—203. This provision was applied by this court in *Krajicek v. West Town's Bus Co.* (1977), 48 Ill. App. 3d 570, 363 N.E.2d 89. In that case the town of Cicero was charged with negligently maintaining and failing to plow Cicero Avenue. Since the street was a highway taken over by the State pursuant to section 4—203, and since the town had not voluntarily plowed the street, the court found no duty on the part of the town to maintain the street.

Plaintiff in part bases her theory of concurrent liability on section 1—102 of the Illinois Highway Code. That section recites that highway

transportation development requires the cooperation of all agencies, State, county, township and municipal. Citing *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213, plaintiff urges that section 1—102 should be interpreted as creating a concurrent duty on the part of the city to maintain highways taken over by the State. The court in *Janssen*, however, did not so interpret section 1—102. In *Janssen* plaintiff was thrown from his motorcycle and seriously injured when he ran into a portion of a traffic island which projected into the street. The traffic island and the projection were owned by the State. The city, however, owned and controlled the street approaching the projection. The court recognized a legislative intent in section 1—102 that State and local authorities cooperate in the management of highways in which both have an interest. The court held that the legislative call for intergovernmental cooperation imposed upon the city a duty to place on its own approaching street a sign warning of the danger ahead. It did not go so far as to impose on the city the duty to alter the island to eliminate the hazard. This duty, the court held, rested exclusively with the State.

Likewise, in the present case, the duty to repair the curb rested exclusively with the State. Since the goal of section 1—102 is the improvement of the highway transportation system, we will not extend *Janssen* so as to impose upon a municipality a duty to place signs on the approaching sidewalk to warn pedestrians of broken pavement ahead.

Plaintiff next argues that her theory of concurrent liability is supported by section 9—3—1 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 9—3—1.) Section 9—3—1 provides in pertinent part:

"Any municipality *may* make a local improvement whenever the public necessity requires such improvement, subject only to the limitations prescribed in this Division 3. This Division 3 shall not be construed as repealing any other laws with respect to local improvements, but shall be considered as an additional grant of power for the purposes herein set out." (Emphasis added.)

Section 9—3—1 essentially authorizes a municipality to make local improvements on its own city streets. Although the court has recognized a duty on the part of a municipality to maintain its streets and sidewalks in a reasonably safe condition (*First National Bank v. City of Aurora* (1978), 71 Ill. 2d 1, 373 N.E.2d 1326), we find no authority, either statutory or judicial, for extending that duty to encompass municipal maintenance of streets and curbs owned by the State.

Plaintiff cites *City of Chicago v. Sanitary District* (1949), 404 Ill. 315, 89 N.E.2d 35, to support her contention that the city's duty to maintain streets extends to streets owned or constructed by another governmental entity. There, the court found the city liable for the maintenance of bridges built by the sanitary districts, but the case is clearly distinguish-

able from the present one. The bridges were constructed by the sanitary district at points in the city where an artificial drainage channel intersected with major thoroughfares. Although the court recognized that the sanitary district initially had a duty to build the bridges so as to restore the highway to its former condition of usefulness, it held that the maintenance of the bridges thereafter was a city, not a district responsibility. Unlike the present case, the streets and bridges involved, at all relevant times, belonged to and were controlled by the city. While the duty of a city to maintain its own streets is beyond question, it is not an issue in the present case.

Plaintiff finally refers to sections 27—398 and 33—5 of the Municipal Code of Chicago to support her theory of concurrent liability. Section 27—398 authorizes the commissioner of streets and sanitation to "designate and maintain, by use of appropriate devices, marks, or lines upon the surface of the roadway, crosswalks, at intersections where in his opinion there is particular danger to pedestrians * * *." Plain and unambiguous provisions of a statute do not need construction. (*Nordine v. Illinois Power Co.* (1965), 32 Ill. 2d 421, 206 N.E.2d 709.) This ordinance clearly authorizes the commissioner to maintain the lines, marks or whatever device is selected to designate the crosswalk area. No duty to maintain the curbs can be read into this ordinance. Nor can we find any authority for imposing upon the city the duty of maintaining the pavement and curbs which fall within the crosswalk area of a State owned highway.

Section 33—5 imposes a penalty upon "[a]ny person who shall injure or tear up any pavement, side or cross walk or any part thereof * * * without * * * permission from the Commissioner of Streets and Sanitation * * *." Again, the plain meaning of this ordinance authorizes the commissioner to penalize persons who tear up city pavement without permission. It also implies on the part of the commissioner the power to grant such permission. There is no language in the ordinance, however, which indicates that this power extends to streets owned by the State rather than the city. The trial court properly found no concurrent duty on the part of the city to maintain property under the exclusive maintenance jurisdiction of the State of Illinois.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.