ERNEST H. HULS *et al.*, Plaintiffs-Appellants, v. CLIFTON, GUNDERSON AND COMPANY, Defendant-Appellee.

Fourth District   No. 4—88—0633

Opinion filed February 23, 1989.—Rehearing denied March 28, 1989.

William M. Goldstein, of Urbana, for appellants.

D. Cameron Dobbins, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Plaintiffs Ernest H. Huls and Dorothy Marlene Huls appeal from an order of the circuit court of Champaign County dated July 28, 1988, which dismissed plaintiffs' third-amended complaint against defendant Clifton, Gunderson and Company for failure to state a cause of action. (Ill. Rev. Stat. 1985, ch. 110, par. 2—615.) We affirm.

Plaintiffs filed their original complaint on August 12, 1986. After various procedures, on June 6, 1988, they filed a three-count, third-amended complaint which generally alleged defendant, a certified public accounting (CPA) firm for two business entities (sellers), had breached a duty it owed to plaintiffs, the subsequent purchasers of those businesses. Count I contained the following allegations: (1) a partner of defendant made plaintiffs aware of the two businesses which were for sale; (2) defendant prepared audited financial statements on and expressed in writing opinions concerning the businesses and provided them to plaintiffs during the negotiations to purchase the two businesses; (3) the audited financial statements showed a total

equity value in both businesses of $1,066,553; and (4) defendant knew or should have known plaintiffs would base their decision to offer and contract to pay the final negotiated purchase price partially upon those audited financial statements.

Plaintiffs further alleged in count I that: (1) defendant is a member of the American Institute of Certified Public Accountants (AICPA); (2) AICPA Rule 101.01 requires CPA firms to maintain a certain degree of independence when expressing an opinion about a company in financial statements; (3) individual partners of defendant had "acted as a member of management" of sellers and had "provided substantial business advice" to them; (4) defendant owed a duty to plaintiffs to disclose their relationship with sellers, and their failure to disclose constituted a breach of that duty; (5) defendant's failure to make disclosure affected plaintiffs' ability to fairly negotiate the purchase of the two businesses; and (6) as a proximate cause of defendant's failure to disclose, plaintiffs contracted to pay $1,433,447 in excess of the combined stated equity value of the two businesses, an amount it "might not [have been] willing to pay had such disclosures been made."

Count II contained the following allegations: (1) AICPA Rule 302.01 provides that a CPA firm shall not charge a contingent fee for professional services rendered; (2) sellers and defendant entered into a contingent fee agreement whereby sellers agreed to pay 5% of the combined sales prices of the two businesses to defendant; (3) defendant prepared audited financial statements on the two businesses and failed to disclose the contingent fee agreement in them; (4) plaintiffs relied upon the statements prepared by defendant; (5) as a proximate result of defendant's failure to disclose, plaintiffs offered and agreed to pay a purchase price to sellers that "included a contingent fee that the sellers were obligated to pay defendant" in the amount of $125,000; and (6) defendant's failure to disclose information further prevented plaintiffs from making informed negotiations, thereby causing them to pay more for the two businesses than they would have paid had the disclosures been made. Plaintiffs further sought punitive damages in count II of their third-amended complaint for defendant's "wilful misconduct."

Finally, count III contained the following allegations: (1) in the audited financial statements which it prepared, defendant misrepresented its independence with regard to sellers; (2) defendant intended to induce plaintiffs to purchase the two businesses by presenting those statements to plaintiffs; (3) in partial reliance on those statements, plaintiffs contracted to purchase the two businesses for a total

price of $2,500,000; (4) had defendant truthfully represented its total relationship with sellers, plaintiffs would not have agreed to pay a purchase price in excess of the combined equity value of the businesses; (5) further, due to defendant's misrepresentations, plaintiffs were "deprived of having another CPA review [sellers'] *** books and financial records"; and (6) as a proximate result of defendant's misrepresentations, plaintiffs sustained damages in the amount of $1,433,447, the amount in excess of the stated combined equity values of the two businesses. Plaintiffs further sought punitive damages in count III of their third-amended complaint for defendant's "wilful misconduct."

On June 27, 1988, defendant moved to dismiss plaintiffs' third-amended complaint. It contended the complaint was insufficient in law because no facts were alleged which created a duty on behalf of defendant to disclose their involvement with sellers or their fee arrangement, contingent or otherwise. Further, it claimed plaintiffs nowhere alleged defendant's opinions failed to fairly present sellers' financial position or that defendant had negligently prepared the financial statements for the two businesses. Finally, defendant maintained the complaint contained no facts which demonstrated any proximate cause between any alleged act or omission and the damages claimed.

On July 28, 1988, the circuit court dismissed plaintiffs' third-amended complaint with prejudice. In favorably ruling on defendant's motion to dismiss that complaint, the court determined "the alleged breach of duty is not and cannot be a proximate cause of the damages claimed and that the pleading fails to set forth facts upon which the relief requested by plaintiffs can be granted." On appeal, plaintiffs contend each count of their third-amended complaint stated a cause of action against defendant.

■ Plaintiffs first maintain count I of their third-amended complaint sufficiently stated a cause of action against defendant for fraudulent concealment. They contend AICPA Rule 101.01 created a duty on the part of defendant to disclose its relationship with the sellers, especially since defendant stated the audit "was made in accordance with generally accepted auditing standards," that defendant breached its duty by failing to disclose the information and, as a proximate result of the omissions by defendant, plaintiffs sustained damages.

AICPA Rule 101.01 states as follows:

> "A member or a firm of which he is a partner or shareholder shall *not* express an opinion on financial statements of an enterprise *unless* he and his firm are *independent* with respect to

such enterprise. Independence will be considered to be impaired if, for example:

\* \* \*

B. During the period covered by the financial statements, during the financial statements, during the period of the professional engagement, or at the time of expressing an opinion, he or his firm

1. Was connected with the enterprise as a promoter, underwriter or voting trustee, a director officer or in any capacity equivalent to that of a member of management or of an employee." (Emphasis added.)

The Second District Appellate Court has concluded that accountants owe a duty to third parties when the purpose and intent of the accountant-client relationship is to benefit or influence a third party. (*Brumley v. Touche, Ross & Co.* (1985), 139 Ill. App. 3d 831, 487 N.E.2d 641.) There, as alleged here, a partnership of certified public accountants audited the books and records of a corporation and issued an audit report on that corporation. The CPA firm became aware that plaintiff was interested in purchasing the corporation and knew that plaintiff would use the information contained in the audit report to formulate his offer of purchase.

The CPA firm told that plaintiff the report accurately reflected the financial position of the company. In reality, however, the report failed to accurately present the company's financial position. That plaintiff contended that, because the CPA firm negligently prepared its audit report on the company, he paid $750,000 more for the company than would have been required had the company's financial position been accurately portrayed. The Second District concluded plaintiff's complaint, which "also allege[d] the traditional elements of negligence in tort," was sufficient to state a cause of action against the CPA firm. *Brumley*, 139 Ill. App. at 836, 487 N.E.2d at 645.

The appellate court in the *Brumley* decision, then, imposed a duty of care on accountants with regard to third-party purchasers like those involved here. Under *Brumley*, defendant here possesses only the duty to fairly and accurately present the financial position of the two businesses. Here, no contention exists that defendant here failed to properly represent the companies' financial position. Plaintiffs only allege defendant failed to disclose the extent of its relationship with the two companies.

Plaintiffs urge us to also impose on defendant a duty of independence in order to promote the accuracy of the information given in the financial reports or to disclose the lack of that independence.

AICPA Rule 101.01 does not require disclosure of this information. Rather, the rule prohibits a certified public accountant from expressing an opinion about a company if he is not independent with respect to that company. An accountant's independence is considered to be impaired if he is a member of management of the company. Plaintiffs here allege one of defendant's partners "acted as a member of management of both of said companies." Arguably, defendant could have owed a duty to plaintiffs to disclose its relationship with the two businesses.

■ However, even if we conclude plaintiffs' complaint set out facts sufficient to support a breach of duty by defendant, plaintiffs still had to set out all of the necessary elements for a cause of action for fraudulent concealment. For concealment to amount to a misrepresentation, not only must it have been done with the intent to deceive under circumstances creating an opportunity and duty to speak (*Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 473 N.E.2d 92), the concealed information must also have been such that the other party would have acted differently had he been aware of it. (*Obermaier v. Obermaier* (1984), 128 Ill. App. 3d 602, 470 N.E.2d 1047.) Proof of damage resulting from an alleged fraud is also an essential element in an action for fraud. *In re Application of Busse* (1984), 124 Ill. App. 3d 433, 438, 464 N.E.2d 651, 655.

■ In count I, plaintiffs alleged defendant's breach of its duty of disclosure caused it to offer "to pay a price greater than the equity value of said businesses, *** which excess value such purchaser *might* not [have been] willing to pay had such disclosures been made." (Emphasis added.) Apparently, plaintiffs do not seek to overturn the sale and recover the purchase price paid but rather attempt to recover as damages that amount over and above the $1,066,553 equity value of the entities listed in the financial statements which they paid to purchase the companies.

However, plaintiffs fail to allege that what they received was not worth the money they paid for it or that they could have purchased the companies for less. Furthermore, they do not state they would not have purchased the companies had they known of the lack of independence between the businesses and defendant. Thus, even assuming, *arguendo*, that count I of plaintiffs' third-amended complaint contained allegations sufficient to establish a duty, a breach of that duty, and a causal connection between the breach and the damages they alleged they sustained, plaintiffs failed to sufficiently allege an element of damages. Count I of plaintiffs' third-amended complaint failed to state a cause of action for fraudulent concealment.

■ Similar reasoning as applied to count I of plaintiffs' third-amended complaint also applies to plaintiffs' count III. In count III, plaintiffs claimed defendant misrepresented its independence to plaintiffs when it failed in its duty to disclose its relationship with sellers; defendant's failure to disclose that information constituted wilful misconduct; defendant's omission of its relationship in the financial statements they prepared created the appearance of independence; defendant intended to induce plaintiffs to purchase the businesses with the financial statements; that plaintiffs relied upon the information contained in the statements; and that plaintiffs agreed to pay a purchase price in excess of what they would have paid had they known of defendant's relationship and fee arrangement with sellers.

Here, plaintiffs appear to allege in count III that defendant possessed a duty to disclose its lack of independence to plaintiffs and the omission of that information from its financial statement on the two entities constituted negligent conduct. Even if defendant had a fiduciary duty outside of the common law duty set forth in *Brumley* to disclose this information, plaintiffs again failed to adequately allege any damages they sustained. They claim they would not have purchased the entities for the agreed upon price had they known of the connection between sellers and defendant. However, they did not indicate whether they could have purchased the companies at a lesser price or whether they would have foregone the purchase altogether. Nor did they allege the property they purchased was not worth the money they paid. Count III failed to state a cause of action for fraudulent misrepresentation.

■ Finally, in count II of their third-amended complaint, plaintiffs alleged AICPA Rule 302.01 prohibits a CPA firm from charging a contingent fee for professional services it renders. Plaintiffs further contended that, because defendant and sellers did, in fact, have a contingent fee arrangement, defendant had a duty to disclose the arrangement in the audited financial statements it prepared. They maintained defendant breached its duty by failing to disclose the information and, as a proximate result of the omissions by defendant, they sustained damages, in that "they offered and agreed to pay a purchase price for the two businesses that included the contingent fee" which sellers were required to pay to defendant.

We agree with plaintiffs that the existence of a sales commission to be paid by a seller to an agent for obtaining the buyer tends to increase the price required by the seller. However, plaintiffs have cited no cases which indicate buyers of property, such as plaintiffs here, are entitled to recover a portion of the purchase price from the agent be-

cause the sales commission was improper and not disclosed to the buyers. Nor are we aware of any such case. We hold that count II also failed to state a cause of action.

For the reasons stated, the order of the circuit court of Champaign County is affirmed.

Affirmed.

LUND and KNECHT, JJ., concur.