FOURTH DIVISION
February 14, 2008

No. 1-06-3300

| | | |
|---|---|---|
| DOD TECHNOLOGIES, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County, Chancery Division |
| Plaintiff-Appellant, | ) ) | No. 05 CH 4677 |
| v. | ) ) | Honorable William Maki, |
| MESIROW INSURANCE SERVICES, INC., and JOHN DOE COMPANIES 1-10, | ) ) ) | Judge Presiding |
| Defendants-Appellees. | ) ) | |

JUSTICE MURPHY delivered the opinion of the court:

Plaintiff, DOD Technologies, brought a five-count putative class-action complaint against defendant, Mesirow Insurance Services, Inc., plaintiff's insurance broker, alleging that defendant received contingent commissions from insurers without informing plaintiff. The trial court granted defendant's motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)) on the basis that (1) section 2-2201 of the Code (735 ILCS 5/2-2201 (West 2004)) precludes claims for breach of fiduciary duty and (2) plaintiff failed to allege actual damages or reliance on the alleged concealment.

## I. BACKGROUND

Plaintiff's second amended complaint alleges as follows. Defendant is a licensed Illinois insurance broker, or "insurance producer." An insurance producer is "a person required to be

licensed under the laws of this State to sell, solicit, or negotiate insurance." 215 ILCS 5/500-10 (West 2004).

Plaintiff provided defendant with confidential and proprietary information with the expectation that defendant would seek the desired insurance at the lowest possible price. Standard industry practice is for consumers to make a single payment to the broker that includes both the insurer's premium and the broker's commission; the producer deducts the commission and forwards the premium to the insurer. Defendant also received "contingent commissions" from insurers, including Hartford Insurance Company, for its placement of insurance for plaintiff and other putative class members. The contingent commissions were based on three factors: (1) the aggregate amount of business referred to the insurer paying the kickbacks, (2) the "loss ratio" performance of the book of business referred to that insurer, and (3) renewals.

Defendant did not disclose its receipt of the contingent commissions to plaintiff. These undisclosed financial incentives caused defendant to refer business to a paying insurer even if the policy and rates quoted by that insurer were not the most advantageous for the customer. These kickbacks, which should have been returned to plaintiff like any other rebate, inflated the cost of insurance to consumers and created a conflict preventing brokers from acting in the customers' best interest. Had plaintiff known about the contingent commissions, it would have been more diligent in its selection of insurance. Approximately 10% or more of defendant's revenues as an insurance broker is derived from kickbacks.

Plaintiff's second amended complaint alleges breach of fiduciary duty, consumer fraud, fraudulent concealment, unjust enrichment, and accounting. Plaintiff based its breach of

fiduciary duty count on section 500-80(e) of the Illinois Insurance Code (215 ILCS 5/500-80(e) (West 2004)), which requires an insurance producer to disclose fees not directly attributable to premiums, and section 2-2201, which precludes breach of fiduciary duty actions against insurance producers but excepts claims based on the wrongful retention or misappropriation of premiums. In alleging that the statute of limitations should be tolled due to defendant's fraudulent concealment and misrepresentation, plaintiff quoted a portion of defendant's Web site, which provided:

> "Our philosophy is to provide sound and unbiased advice with an emphasis on protecting your interests at all times. Rather than focusing on one area, we are adept at reviewing your entire situation, integrating personal and professional goals to identify and eliminate any areas of vulnerability. We are committed to being a resource for you."

The trial court dismissed counts I, IV, and V (breach of fiduciary duty, unjust enrichment, and accounting) on the basis that section 2-2201 of the Code precludes claims for breach of fiduciary duty. Counts II and III (consumer fraud and fraudulent concealment) were dismissed because there was no proof of actual damages or reliance on the alleged concealment.

## II. ANALYSIS

### A. Motion to Dismiss

A motion to dismiss pursuant to section 2-615 attacks the legal sufficiency of the complaint. *R & B Kapital Development, LLC v. North Shore Community Bank & Trust Co.*, 358 Ill. App. 3d 912, 920 (2005). A court reviewing an order granting a section 2-615 motion takes

all well-pled facts as true. *R & B*, 358 Ill. App. 3d at 920. "On review of a section 2-615 dismissal, the reviewing court must determine whether the allegations of the complaint, when interpreted in [the] light most favorable to the plaintiff, sufficiently set forth a cause of action on which relief may be granted." *R & B*, 358 Ill. App. 3d at 920. We review a dismissal pursuant to section 2-615 *de novo*. *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 815 (2003).

Although plaintiff makes frequent references to the trial court's abuse of discretion, a dismissal pursuant to section 2-615 is reviewed *de novo*. *Collins*, 338 Ill. App. 3d at 815.

### 1. *Breach of fiduciary duty*

Plaintiff argues that the trial court erred in dismissing its claims for breach of fiduciary duty, unjust enrichment, and accounting because it has alleged the existence of a fiduciary relationship between plaintiff and defendant. Defendant responds that section 2-2201 of the Code precludes claims for breach of fiduciary duty.

To state a claim for breach of fiduciary duty, a plaintiff must establish (1) a fiduciary duty on the part of the defendant, (2) the defendant's breach of that duty, and (3) damages that were proximately caused by the defendant's breach. *Neade v. Portes*, 193 Ill. 2d 433, 444 (2000). Historically, Illinois has recognized that the relationship between an insured and his broker, acting as the insured's agent, is a fiduciary one. *AYH Holdings, Inc. v. Avreco, Inc.*, 357 Ill. App. 3d 17, 32 (2005); *Perelman v. Fisher*, 298 Ill. App. 3d 1007, 1011 (1998).

In 1996, the General Assembly enacted Public Act 89-638 (Pub. Act 89-638, § 5, eff. January 1, 1997), which added section 2-2201 of the Code. Section 2-2201 provides:

"(a) An insurance producer *** shall exercise ordinary care and skill in renewing, procuring, binding, or placing the coverage requested by the insured or proposed insured.

(b) No cause of action brought by any person or entity against any insurance provider, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance shall subject the insurance producer, registered firm, or limited insurance representative to civil liability under standards governing the conduct of a fiduciary or fiduciary relationship *except when the conduct upon which the cause of action is based involves the wrongful retention or misappropriation by the insurance producer, registered firm, or limited insurance representative of any money that was received as premiums, as a premium deposit, or as payment of a claim.*

***

(d) While limiting the scope of liability of an insurance producer, registered firm, or limited insurance representative under standards governing the conduct of a fiduciary or a fiduciary relationship, the provisions of this Section do not limit or release an insurance producer, registered firm, or limited insurance representative from liability for negligence concerning the sale, placement, procurement, renewal, binding, cancellation of, or failure to procure any policy of insurance."  (Emphasis added.)  735 ILCS 5/2-2201 (West 2004).

The goal of a court when construing a statute is to ascertain the legislature's intent, "and the surest indicator *** is the language in the statute." *Department of Public Aid ex rel. Schmid v. Williams*, 336 Ill. App. 3d 553, 556 (2003). "To this end, a court may consider the reason and necessity for the statute and the evils it was intended to remedy, and will assume the legislature did not intend an *** unjust result." *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 309 (2001). A court may not supply omissions, remedy defects, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. *Beyer*, 324 Ill. App. 3d at 309-10. If the language of the statute is clear, its plain and ordinary meaning must be given without resorting to other aids of construction. *Beyer*, 324 Ill. App. 3d at 310.

Since the enactment of section 2-2201, the relationship between an insured and its broker continues to be a fiduciary one. See *Perelman*, 298 Ill. App. 3d at 1013 (an insured's failure to read the terms of a policy was not an absolute bar to recovery against his broker for breach of fiduciary duty); *Cincinnati Insurance Co. v. Guccione*, 308 Ill. App. 3d 220, 224 (1999) (a question of fact existed as to whether the broker breached his fiduciary duty to the insured by misleading him about the nature and potential cost of his policy). Rather than eliminate the fiduciary relationship between the insured and the producer, the plain language of section 2-2201 protects the insurance producer from civil liability arising out of the fiduciary relationship. *Mizuho Corp. Bank (USA) v. Cory & Associates, Inc.*, 341 F.3d 644 (7th Cir. 2003), for example, considered section 2-2201(b) an "automatic exemption from liability for breaches of fiduciary duty." *Mizuho*, 341 F.3d at 651-52. Similarly, *AYH Holdings*, a summary judgment case based

on the broker's failure to disclose the insurer's unsound financial condition, acknowledged that section 2-2201(b) "immunizes an insurance broker from claims based on breach of fiduciary duty" but held that it could not determine when the cause of action accrued and, therefore, whether section 2-2201 barred the claim. *AYH*, 357 Ill. App. 3d at 43. *Moore v. Johnson County Farm Bureau*, 343 Ill. App. 3d 581, 585 (2003), which relates to the failure to procure adequate insurance, also noted that section 2-2201 "limits any civil liability arising out of a fiduciary relationship between an insured and an insurance agent."

Plaintiff argues that its complaint falls within the exception to section 2-2201 for causes of action involving "the wrongful retention or misappropriation" of money received as premiums. Defendant responds that "wrongful retention or misappropriation" means diverting funds intended to pay premiums for another wrongful purpose. While Black's Law Dictionary defines "misappropriation" as "the application of another's property or money dishonestly to one's own use" (Black's Law Dictionary 1019 (8th ed. 2004)), the parties have cited, and this court has found, no cases explaining what constitutes "wrongful retention or misappropriation" of premiums in section 2-2201(b).

Defendant argues that wrongful retention or misappropriation "plainly means diverting funds intended to pay premiums for another wrongful purpose, such as placing money received as premiums into a broker's operating account rather than into a premium trust account, or failing to pay money received as a premium to the insurer." Despite defendant's interpretation of the "plain" meaning of the statute, it only cites *Western Life Insurance Co. of America v. Chapman*, 31 Ill. App. 3d 368 (1975). In *Western Life*, an insurance agent violated a provision of the

Insurance Code providing that premiums collected by insurance agents were held in a fiduciary capacity and could not be " 'misappropriated or converted to his own use or illegally withheld' " when he gave premium money to his brother or placed it in an account that was not a premium trust account. *Western Life Insurance*, 31 Ill. App. 3d at 372, quoting Ill. Rev. Stat. 1971, Ch. 73, par. 1065.52.

Also instructive is case law interpreting section 500-115 of the Insurance Code, which provides that any money that an insurance producer receives for soliciting, negotiating, renewing, continuing, or binding insurance policies "shall be held in a fiduciary capacity and shall not be misappropriated, converted, or improperly withheld." 215 ILCS 5/500-115(a) (West 2004). "Thus, insurance producers act as fiduciaries in holding the collected premiums in trust for the benefit of the insurer." *Safeway Insurance Co. v. Daddono*, 334 Ill. App. 3d 215, 218 (2002). Subsection 500-115(d) provides that an insurance producer who "knowingly misappropriates or converts to his or her own use or illegally withholds fiduciary funds" commits a criminal act. 215 ILCS 5/500-115(d) (West 2004). In *People v. Lambert*, 195 Ill. App. 3d 314 (1990), the court affirmed the defendant's conviction for criminal breach of fiduciary duty under the precursor to section 500-115 when he received checks from a widow for insurance coverage but the insurance company had no record of applications for insurance or billings for insurance renewals that corresponded to the checks.

While these cases are instructive as to how courts have interpreted misappropriation or conversion, the case at bar presents a different set of facts. The trial court granted the section 2-615 motion based on the belief that defendant was protected from "civil liability under standards

1-06-3300

governing the conduct of a fiduciary or fiduciary relationship." 735 ILCS 5/2-2201(b). In granting the motion, the court did not find that plaintiff's complaint alleged the exception for "when the conduct upon which the cause of action is based involves the wrongful *** misappropriation by the insurance producer *** of any money that was received as premiums." 735 ILCS 5/2-2201(b) (West 2004).

According to the complaint, plaintiff provided defendant with confidential and proprietary information with the expectation that defendant would seek the desired insurance at the lowest possible price. The complaint alleged that the contingent commissions were based on the aggregate amount of business referred to the insurer paying the kickbacks, the "loss ratio" performance of the book of business referred to that insurer, and renewals. According to the complaint, these undisclosed incentives caused defendant to refer business to a paying insurer even if the policy and rates quoted by that insurer were not the most advantageous for the customer. We note that a court interpreting a statute will assume that the legislature did not intend an unjust result (*Beyer*, 324 Ill. App. 3d at 309); the placement of policies that are not the most advantageous for the consumer is most certainly unjust. We hold that the placement of policies with companies that were not the most advantageous for the consumers constitutes "the wrongful *** misappropriation" of money received as premiums.

It is not the undisclosed incentives that constitute misappropriation. Rather, the undisclosed incentives, as alleged in the complaint, were what led defendant to place certain policies without regard for the customer's needs and in breach of its fiduciary duty. We hold that a producer misappropriates premiums within the terms of section 2-2201 when it directs a

-9-

premium to an insurer, the price or coverage is not in the customer's best interest, and the placement earns the producer undisclosed contingent incentives.

We find that section 2-2201 of the Code does not preclude plaintiff's claim for breach of fiduciary duty, because plaintiff comes within the exception in section 2-2201(b) by alleging in its complaint that defendant misappropriated certain premiums by placing them with an insurer when the placement was not in the best interest of the consumer. Accordingly, we reverse the trial court's dismissal of counts I, IV, and V (breach of fiduciary duty, unjust enrichment, and accounting).

## 2. *Unjust enrichment*

Defendant also argues that the unjust enrichment count should be dismissed because a contract governs the relationship between the parties. Defendant did not raise this argument in its motion to dismiss the second amended complaint, and plaintiff did not respond to the argument in its reply brief. While an appellant who fails to raise an issue in the trial court waives that issue, an appellee may raise an issue on review that was not presented to the trial court in order to sustain the judgment, as long as the factual basis for the issue was before the trial court. *Schanowitz v. State Farm Mutual Automobile Insurance Co.*, 299 Ill. App. 3d 843, 848 (1998).

A claim for unjust enrichment cannot be asserted when a specific contract exists between the parties and concerns the same subject matter. *Zadrozny v. City Colleges*, 220 Ill. App. 3d 290, 295 (1991). The complaint only alleges that plaintiff "retained" defendant, and the contract attached to the complaint appears to be between plaintiff and Hartford Insurance. Under these circumstances, we do not believe that whether a "specific" contract concerning "the same subject

matter" can be determined. Accordingly, we reject defendant's argument.

### 3. *Consumer fraud*

Plaintiff alleges that defendant violated the Consumer Fraud and Deceptive Trade Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)) by planning these schemes with insurers, failing to disclose the truth about the extent of the kickbacks, and failing to disclose its conflict of interest. Plaintiff alleges that it relied on "the faulty information given" by defendant and, as a result, paid excessive premiums. Defendant contends that the trial court properly dismissed plaintiff's consumer fraud count because it failed to allege the omission of a material fact or actual damages.

To establish a claim under the Consumer Fraud Act, plaintiff must show that (1) defendant committed a deceptive act or practice; (2) defendant intended for plaintiff to rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) plaintiff suffered actual damages; and (5) plaintiff's damages were proximately caused by defendant's deceptive conduct. *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 703 (2005). A complaint alleging a consumer fraud violation must be pled with the same particularity as that required under common law fraud. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501 (1996). The Consumer Fraud Act is to be liberally construed to effectuate its purpose. *Johnson v. Matrix Financial Services Corp.*, 354 Ill. App. 3d 684, 690 (2004).

To bring a civil action for damages, the Consumer Fraud Act requires that a plaintiff suffer "actual damage." 815 ILCS 505/10a(a) (West 2004); *Avery v. State Farm Mutual Insurance Co.*, 216 Ill. 2d 100, 195 (2005) (plaintiff must suffer "actual damage"). The

complaint alleges that plaintiff was damaged by increased premiums and profits that defendant received from the undisclosed contingent commissions. Defendant contends that plaintiff's alleged damages are speculative because there is no support for the idea that if defendant had disclosed receipt of the contingent commissions, plaintiff's premiums would have been reduced by the amount of the contingent commission.

In *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 287 (2006), the plaintiff alleged that the value of his Jeep was diminished by a defective exhaust manifold. The court acknowledged that diminution of value has been held to be a legally cognizable injury under the Act; however, the plaintiff did not specify how the value of his Jeep had been diminished. *White*, 368 Ill. App. 3d at 287. "He never says he would have done anything differently, like bargain for a lower price or refuse to buy the vehicle, if he had known about exhaust manifold failures." *White*, 368 Ill. App. 3d at 287. While this is not a diminution-of-value case, it is significant that plaintiff's only allegation as to what it would have done differently (which is in a different count) is that it would have been "more diligent in its selection of insurance" and would have required competing bids from defendant. Thus, plaintiff does not allege that it would have refused to use defendant's services if it had known of the contingent commissions or that it would have bargained for better insurance prices while still using defendant as a broker.

Plaintiff contends on appeal that it is sufficient that "the basic elements of actual damage are pleaded but not that they are proved at this stage." It cites *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 805 (2006), which is distinguishable; the plaintiffs in that case alleged that they suffered actual damage because their windows underwent rotting and deterioration.

Defendant argues that an additional reason for dismissing the consumer fraud count is that it did not allege the omission of a material fact. The Consumer Fraud Act defines a deceptive act as "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any [such] material fact *** in the conduct of trade or commerce." 815 ILCS 505/2 (West 2004). An omission is "material" if the plaintiff would have acted differently had it been aware of it, or if it concerned the type of information upon which it would be expected to rely in making its decision to act. *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138, 141 (1995). It is difficult to believe that a consumer would not rely on a broker's acceptance of contingent commissions in deciding which broker to patronize or what insurance coverage to purchase. However, while plaintiff alleged that it would have scrutinized defendant's bills had it known of the contingent commissions, it did not allege that the types or the amount of commissions paid to defendant were material to plaintiff's decision to *purchase* insurance coverage. Therefore, while it may have acted differently, that difference is of little consequence.

Defendant also claims that section 10b(1), which provides that the Act does not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States" (815 ILCS 505/10b(1) (West 2004)), applies because its conduct was "in compliance" with section 500-80(e) of the Insurance Code (215 ILCS 5/500-80(c) (West 2004)). See *Avery*, 216 Ill. 2d at 192-93; *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 581 (2005). Section 500-80(e) establishes various disclosure requirements when "an insurance producer or business entity charges any fee or

compensation separate from commissions deductible from, or directly attributable to, premiums on insurance policies or contracts." 215 ILCS 5/500-80(e) (West 2004). Defendant argues that if section 500-80(e) does not apply because it did not "charge" the consumer directly but instead received the commission from an entity other than the consumer. However, subsection 500-80(e) does not specify that the *consumer* must be charged, only that the separate fee be charged. Therefore, we conclude that section 10b(1) did not immunize defendant.

We affirm the dismissal of the consumer fraud count.

### 4. *Fraudulent concealment*

As with the consumer fraud count, the trial court dismissed the fraudulent concealment count on the basis that it failed to allege actual damages or reliance. To establish fraudulent concealment, a plaintiff must allege (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making reasonable inquiry or inspection, and relied upon misrepresentation as a fact that did not exist; (4) the concealed truth was such that the injured party would have acted differently if he had been aware of it; and (5) reliance by the person from whom the fact was concealed led to his injury. *Stewart v. Thrasher*, 242 Ill. App. 3d 10, 16 (1993). There is a high standard of specificity required for pleading fraud claims. *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 31 (2003).

While the fraudulent concealment count alleges that defendant intended that plaintiff rely on its misrepresentation and concealment, it does not allege that plaintiff actually relied on

anything. The consumer fraud count does allege that plaintiff relied on "faulty information" given by defendant, but it does not specify what this "faulty information" is.

The trial court also ruled that plaintiff failed to allege actual damages. This count alleges that plaintiff "suffered actual damages"; elsewhere, plaintiff alleges that it was damaged by increased premiums and profits that defendant received from the undisclosed contingent commissions. Defendant cites *Huls v. Clifton, Gunderson & Co.*, 179 Ill. App. 3d 904 (1989), where the plaintiffs, who were purchasers of two businesses, claimed that the defendant's failure to disclose its relationship with the sellers caused it to offer to pay a price greater than the equity value of the businesses, "which excess value such purchaser might not have been willing to pay had such disclosures been made." The court found that the plaintiffs failed to state a cause of action for fraudulent concealment because they did not sufficiently allege damages. *Huls*, 179 Ill. App. 3d at 909. "[P]laintiffs fail to allege that what they received was not worth the money they paid for it or that they could have purchased the companies for less. Furthermore, they do not state they would not have purchased the companies had they known about the lack of independence between the businesses and defendant." *Huls*, 179 Ill. App. 3d at 909. See also *State Security Insurance Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 589-90 (1994). Here, while plaintiff alleges that its premiums were inflated, it does not allege that it would not have purchased its chosen insurance had it known of the contingent commissions.

### 5. *Affirmative matter*

Plaintiff argues that defendant's motion to dismiss should have been stricken or denied because it relied on a report prepared by the Insurance Information Institute. Defendant responds

that citation to secondary sources is proper in a section 2-615 motion to dismiss.

A trial court may not consider documentary evidence not incorporated into the pleadings as exhibits in ruling on a section 2-615 motion. *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1068 (1992). Regardless of whether the report is considered a "secondary source," however, in the hearing on defendant's motion to dismiss, the trial court makes no reference to it. While plaintiff claims that the trial court "presumably" relied on the report "at least in part," there is nothing in the record to support that contention. Accordingly, we reject plaintiff's argument.

### B. Requests to Admit

On May 11, 2005, plaintiff served defendant with requests for production of documents, requests to admit, and interrogatories. The next day, defendant filed a motion to dismiss, and in the order setting a briefing schedule, the court stayed discovery during the pending motion to dismiss. On June 23, 2005, upon agreement of the parties, portions of the complaint were dismissed and plaintiff was granted leave to file a first amended complaint. Defendant filed a motion to dismiss the first amended complaint and to stay discovery on September 22, 2005. On October 4, 2005, the court stayed all discovery pending the resolution of defendant's motion to dismiss. In its response to defendant's motion to dismiss the first amended complaint, plaintiff argued that certain facts should be admitted because defendant failed to respond to the requests to admit. On December 6, 2005, the trial court struck "all previously filed discovery and requests to admit" and stayed discovery until further order of the court. The trial court noted that plaintiff was not barred from renewing the requests to admit in the future.

1-06-3300

Plaintiff argues that the trial court abused its discretion when it refused plaintiff's request to deem facts admitted under Supreme Court Rule 216 (134 Ill. 2d R. 216) and later struck them.[1] According to plaintiff, defendant "simply never responded" to requests to admit that it propounded soon after filing the complaint. Plaintiff contends that the trial court "ignored and directly controverted" supreme court rules regarding requests to admit and instead "fabricated as rule that the requests were 'untimely' or 'premature' " when it struck the requests to admit.

The trial court has great latitude in ruling on discovery matters. *Mutlu v. State Farm Fire & Casualty Co.*, 337 Ill. App. 3d 420, 434 (2003). A trial court's rulings on such matters will not be disturbed absent a manifest abuse of discretion. *Mutlu*, 337 Ill. App. 3d at 434. While plaintiff contends that "there is some question" as to whether requests to admit are discovery, in *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995), our supreme court stated that "a request for admissions is essentially a discovery tool." After *Bright*, the supreme court amended Rule 201, entitled "General Discovery Provisions," to include requests to admit within the definition of "discovery methods." 166 Ill. 2d R. 201(a). More recently, in *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334 (2007), the court concluded, "This amendment clearly reinforced our statement in *Bright* that requests for admission are part of the discovery process, and *** [w]e hold, as we did in *Bright*, that requests for admission constitute discovery." *Haas*, 226 Ill. 2d at 345, 347. In light of this clear statement by the supreme court, the requests to admit clearly fall within the

---

[1] Plaintiff does not argue that the trial court erred in striking its requests for production of documents and interrogatories, the other discovery it propounded.

1-06-3300

court's order pertaining to stays of "discovery."

Furthermore, in arguing that defendant "simply did not respond," plaintiff ignores that the trial court stayed discovery twice during defendant's pending motions to dismiss. Indeed, while plaintiff argues that the trial court needed "good cause" under Rule 183 to excuse defendant's failure to respond, it fails to address the trial court's discretion to stay discovery while a motion to dismiss is pending. In *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373 (2004), the court found that the trial court did not err when it stayed discovery until ruling on the defendant's motion to dismiss, even though the case could have been resolved earlier or settled if discovery had not been postponed. "We cannot say that it was a manifest abuse of discretion for the trial court to stay discovery until it ruled on the motion to dismiss, because if a cause of action had not been stated, discovery would have been unnecessary." *Adkins Energy*, 347 Ill. App. 3d at 381. Similarly, in *Redelmann v. Claire-Sprayway, Inc.*, 375 Ill. App. 3d 912 (2007), this court affirmed the trial court's stay of discovery pending the resolution of a motion to dismiss because it was unwilling to permit the plaintiff to "go on a fishing expedition." *Redelmann*, 375 Ill. App. 3d at 927. Here, as in *Redelman*, the trial court stated that plaintiff might be in a position to renew the requests to admit in the future. Also, plaintiff has failed to explain how the requests to admit would help him overcome the pleading deficiencies in its complaint. See *Redelmann*, 375 Ill. App. 3d at 927.

Although plaintiff argues that a stay was not in effect from June 23, 2005, when the original complaint was dismissed, until October 4, 2005, when the court stayed all discovery pending the resolution of defendant's motion to dismiss, the court struck all filed discovery when

-18-

it dismissed the first amended complaint. A trial court may properly quash a discovery request when it has sufficient information upon which to decide a defendant's motion to dismiss. *Mutlu*, 337 Ill. App. 3d at 434. Significantly, plaintiff does not argue that discovery was needed for the trial court to rule on defendant's motion to dismiss or for plaintiff to successfully resist the motion. See *Adkins Energy*, 347 Ill. App. 3d at 381; *Evitts v. DaimlerChrysler Motors Corp.*, 359 Ill. App. 3d 504, 514 (2005) ("Discovery is not necessary where a cause of action has not been stated.").

The trial court did not abuse its discretion when it stayed discovery and struck plaintiff's requests to admit.

### III. CONCLUSION

In summary, because we find that the conduct alleged in plaintiff's complaint constituted the "misappropriation" of money received as premiums, we reverse the dismissal of counts I, IV, and V. We affirm the dismissal of the consumer fraud and common law fraud counts as well as the trial court's rulings regarding discovery.

Affirmed in part and reversed in part; cause remanded.

NEVILLE, P.J., and CAMPBELL, J., concur.