HAN MUTLU, Plaintiff-Appellant, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee.

First District (3rd Division)   No. 1—02—0816

Opinion filed February 11, 2003.

David A. Shapiro, of Laser, Pokorny, Schwartz, Friedman & Economos, P.C., of Chicago, for appellant.

Michael Resis, of O'Hagan, Smith & Amundsen, L.L.C., of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

The plaintiff, Han Mutlu, filed a three-count complaint against the defendant, State Farm Fire and Casualty Company, alleging a breach of contract (count I), a violation of section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2000)) (count II) and a breach of the common law duty of good faith and fair dealing (count III). The plaintiff voluntarily dismissed count III. The circuit court granted summary judgment to the defendant on both counts of the complaint. The plaintiff appeals.

On appeal, the plaintiff raises the following issues: whether the circuit court erred when it entered partial summary judgments for the defendant and whether the circuit court abused its discretion when it failed to compel the defendant to comply with discovery prior to ruling on the defendant's motions for partial summary judgment. We affirm the judgment of the circuit court.

## BACKGROUND

### I. The Policy

The plaintiff purchased from the defendant a condominium unit owners insurance policy, which provided coverage between November 24, 1997, and November 24, 1998. The policy provided coverage for claims made against the plaintiff because of bodily injury or property damage due to an occurrence. The policy defined "occurrence" as meaning:

"an accident, including exposure to conditions, which results in:
a. **bodily injury**; or
b. **property damage**; during the policy period."

Property damage is defined as:

"physical damage to or destruction of tangible property, including loss of use. Theft or conversion of property by an **insured** is not **property damage**."

In addition, the policy also provided that policy did not provide coverage for:

"a. **bodily injury or property damage**:
(1) which is either expected or intended by an **insured**; or

(2) to any person or property which is the result of willful and malicious acts of the **insured**."

## II. The Litigation

The plaintiff filed the instant lawsuit on April 9, 2001. The following facts are taken from the allegations contained in the complaint.

On October 6, 1997, the plaintiff filed suit against the 1550 Lake Shore Drive Condominium Association (the Association) (Mutlu v. 1550 Lake Shore Drive Condominium Ass'n, No. 97 CH 12528). The Association filed a counterclaim against the plaintiff seeking injunctive relief and alleging that he continuously ran the hot water in his unit to the detriment of his neighbors and in violation of Illinois law. On or about March 12, 1998, the plaintiff tendered the defense of the Association's counterclaim to the defendant. On May 8, 1998, the defendant denied coverage and refused to defend the plaintiff on the Association's counterclaim. As a result, the plaintiff expended in excess of $100,000 in defense and investigation expenses in connection with the Association's counterclaim.

In another suit filed by the plaintiff (Mutlu v. Brodny, 97 L 10292), Phyllis Brodny, a resident of the condominium building in which the plaintiff resided, filed a counterclaim against the plaintiff. After initially agreeing to defend the plaintiff against Ms. Brodny's counterclaim, the defendant subsequently notified the plaintiff that it did not have a duty to indemnify him and declined to defend him against any of the counterclaims filed against him by Ms. Brodny.

Eventually, the Association paid the plaintiff $700,000 and issued a letter explaining that the plaintiff was not responsible for the hot water deficiencies and apologizing to the plaintiff.

After the suit in this case was filed, the plaintiff served interrogatories and a production of documents request on the defendant. However, State Farm refused to answer them.

On September 14, 2001, the defendant filed a motion for partial summary judgment as to count I of the complaint. In support of its motion, the defendant argued that the plaintiff failed to allege that any property damage had occurred or that any physical damage was the result of an occurrence as defined by the insurance policy in this case because it was the result of deliberate, intentional and malicious acts by the plaintiff.

In response, on October 11, 2001, the plaintiff filed a motion to stay summary judgment proceedings and to compel discovery. On October 24, 2001, the circuit court entered an order continuing generally the plaintiff's motion to stay and compel discovery. On November 26, 2001, the plaintiff filed a response to the defendant's motion for

partial summary judgment and a cross-motion for partial summary judgment.

On February 1, 2002, the circuit court issued a memorandum and order granting the defendant's motion for partial summary judgment as to count I of the complaint.

On February 7, 2002, the defendant filed a motion for partial summary judgment as to count II of the complaint. The motion was granted by the circuit court on February 19, 2002.

The plaintiff filed a timely notice of appeal.

## ANALYSIS

### I. Standard of Review

■ The court reviews the granting of motions for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

### II. Policy Construction

■ The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court that are appropriate subjects for disposition by way of summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993).

■ In construing an insurance policy, the primary function of the court is to ascertain and enforce the intention of the parties as expressed in the agreement. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. If the words of the policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078. The court will not search for ambiguity where there is none. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391, 620 N.E.2d at 1078.

### III. Summary Judgment

The plaintiff contends that the circuit court erred in granting the defendant's motions for partial summary judgment because the defendant had an obligation to defend him against the Association's

counterclaim under the terms of the liability policy the defendant issued to him.[1]

## A. Determination of Duty to Defend

■ To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaint, and if the complaint alleges facts within or potentially within policy coverage, an insurer is obliged to defend its insured even if the allegations are groundless, false or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930. Moreover, if the underlying complaint alleges several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930. The underlying complaint and the insurance policy must be liberally construed in favor of the insured. 144 Ill. 2d at 74, 578 N.E.2d at 930.

## B. Discussion

Under the terms of the policy at issue in this case, the defendant was required to defend the plaintiff if the Association's counterclaim alleged an occurrence resulting in property damage. The defendant would not be required to defend the plaintiff if the property damage was either expected or intended by the plaintiff or caused maliciously or willfully by the plaintiff. We turn first to the question of whether there was property damage in this case.

The Association's counterclaim and exhibits thereto alleged that the plaintiff, who resided in unit 12A, had caused hot water shortages affecting the lower half (floors 2 through 14) of the condominium building by continually running the hot water in his unit. The Association alleged that the problem first manifested itself on the weekend of November 14, 1997. After residents reported hearing water running in the plaintiff's unit, the plaintiff explained that he was washing his bathtub. The hot water shortages continued. Finally, on the weekend of February 21, 1998, after residents had reported a lack of hot water, it was determined that hot water was running into the plaintiff's bathtub. Failing to rouse the plaintiff, Association members,

---

[1]The plaintiff does not raise the defendant's failure to defend him against the Brodny counterclaims in this appeal.

with the help of a locksmith and accompanied by a police officer, entered the plaintiff's unit. The plaintiff denied he had been running water in his unit.

Under the policy in this case, "property damage" means physical damage to or destruction of tangible property, including loss of use.

In *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 312, 757 N.E.2d 481, 502 (2001), our supreme court addressed the meaning of the term "physical injury." In that case, the policies defined property damage as " '*physical* injury to \*\*\* tangible property which occurs during the policy period.' (Emphasis added.)" *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 298, 757 N.E.2d at 494. After examining the various dictionary definitions, the court concluded that "to the average, ordinary person, tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension." *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 301, 757 N.E.2d at 496.

The Association's counterclaim did not allege any physical damage to the hot water system in the condominium building as a result of the plaintiff's alleged continuous running of the hot water. However, relying on *Eljer Manufacturing, Inc.*, the plaintiff argues that since water, hot or cold, constitutes tangible property, the allegation that the continuous running of the hot water altered the material dimensions of the hot water supply alleges physical damage to the water.

But the water *supply* is not the tangible property; the water is. The plaintiff fails to explain how the water itself is "damaged" by being either hot or cold. The appearance of water is not altered by whether it is hot or cold; neither its shape nor its color is changed by its temperature. While less hot water might not be desirable, as the supreme court explained, "to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage, such as diminution in value as a result from the failure of a component." *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 301-02, 757 N.E.2d at 496. In the present case, the "hot" component of the water was diminished, resulting in "intangible" damage. Therefore, the plaintiff's argument fails.

However, the plaintiff then points out that under the policy's definition of "property damage," he was entitled to coverage if his conduct caused a "loss of use" of tangible property. Since the Association's counterclaim alleged the "loss of use" of the hot water, the plaintiff maintains that the counterclaim alleged property damage by the plaintiff for which he was entitled to coverage.

The parties acknowledge that Illinois courts have not addressed this precise issue and cite to several out-of-state cases as authority for their respective positions.

In the absence of an Illinois determination on a point of law, the courts of this state will look to other jurisdictions as persuasive authority. *Atwood Vacuum Machine Co. v. Continental Casualty Co. of Chicago*, 107 Ill. App. 2d 248, 263, 246 N.E.2d 882, 890 (1969).

The plaintiff urges this court to follow the decisions in *American Home Assurance Co. v. Libbey-Owens-Ford Co.*, 786 F.2d 22 (1st Cir. 1986), and *Gibson v. Farm Family Mutual Insurance Co.*, 673 A.2d 1350 (Me. 1996).

In *American Home Assurance Co.*, "property damage" was defined in the policy at issue as " 'physical injury to, or physical destruction of, tangible property, including loss of use thereof.' " *American Home Assurance Co.*, 786 F.2d at 24.

In that case, the court of appeals first noted that the 1973 revision of the comprehensive general liability policy (CGL), used by most insurance companies, added the modifier " 'physical' " injury to the definition of " 'property damage' " in order to restrict recovery for intangible losses. Therefore, under this policy language, some physical injury to tangible property must be shown to trigger coverage. *American Home Assurance Co.*, 786 F.2d at 25.

The court agreed with the district court's finding that the policy did not require tangible property to suffer physical injury in order for a loss of use claim to be covered, stating as follows:

> "Because the American Home policy explicitly defined property damage as 'physical injury' to tangible property, and because none of Hancock's claims entailed or resulted from physical damage to the *Hancock Building*, the district court concluded that none of Hancock's claims for consequential damages resulting from the breakage of [the defendant's] windows were covered under the policy. The court did find coverage for the loss of use claim because the policy defined property damage as 'physical injury to ... tangible property, *including the loss of use thereof*' (emphasis added). The court noted that, although the word 'including' could suggest that loss of use must be traced to some physical injury, it was more reasonable to view the additional phrase 'loss of use thereof' as including any 'loss of use of tangible property', independent of physical injury to that property. The court also noted that the American Home policy was significantly different from other polices that explicitly cover only 'physical injury to tangible property ... including loss of use thereof *resulting therefrom*' (emphasis added). [Citation.]" *American Home Assurance Co.*, 786 F.2d at 25.

In *Gibson*, the policy defined "property damage" as "physical injury to or destruction of tangible property, including the loss of use of this property." *Gibson*, 673 A.2d at 1353. Interpreting the language of the policy against the insurer, the court concluded that the policy

included loss of use of tangible property with no accompanying physical injury to that property. *Gibson,* 673 A.2d at 1353.

The defendant maintains that other jurisdictions have interpreted the same policy language to require "physical injury" to the tangible property before there is coverage for loss of use. See *Coulter v. Cigna Property & Casualty Cos.,* 934 F. Supp. 1101 (N.D. Iowa 1996); *Continental Insurance Co. v. Bones,* 596 N.W.2d 552 (Iowa 1999); *Ehlers v. Johnson,* 164 Wis. 2d 560, 476 N.W.2d 291 (App. 1991); *Dixon v. National American Insurance Co.,* 411 N.W.2d 32 (Minn. App. 1987).

In *Dixon,* the policy at issue defined "property damage" as "physical injury to or destruction of tangible property, including loss of use of this property." *Dixon,* 411 N.W.2d at 33. The reviewing court held that buyers' claims against the sellers-insureds that a septic system was inadequate and outside the property's boundary lines did not constitute property damage. The court noted that there were no allegations that the property was injured or damaged in any way, the only damage being to the buyers and their interest in the property. *Dixon,* 411 N.W.2d at 33-34.

In *Ehlers v. Johnson,* the insurance company refused to defend its insureds against a suit alleging that they had misrepresented the lot lines in a real estate transaction. The policy in that case defined property damage to mean *"physical injury to or destruction of tangible property, including loss of use of this property."* (Emphasis in original.) *Ehlers,* 164 Wis. 2d at 562, 476 N.W.2d at 292.

The reviewing court rejected the insureds' argument that no physical injury to the property was required in order to trigger coverage. The court reasoned as follows:

"The loss of use clause is introduced by the verb 'including.' The dictionary defines 'including' as 'to take in or comprise as part of a whole ....' [Citation.] The loss of use clause is thus introduced as a subset of 'physical injury to or physical destruction of tangible property.' If the loss of use clause were interpreted as the [insureds] would have it, i.e., as any nonphysical injury to tangible property, the definition of property damage would effectively read: 'physical injury to ... tangible property, including non-physical injury.' We reject such a contradictory reading." *Ehlers,* 164 Wis. 2d at 564, 476 N.W.2d at 293.

In *Coulter,* the policy at issue defined "property damage" as " 'physical damage or destruction to tangible property, *including the loss of the use of that property.'* " (Emphasis in original.) *Coulter,* 934 F. Supp. at 1118.

Because the Iowa courts had not directly addressed whether such policy language required that the tangible property be physically dam-

aged or destroyed for there to be coverage for loss of its use, the district court reviewed cases from other jurisdictions.

The *Coulter* court noted that the definitions in both *Ehlers* and *Dixon* were virtually identical to the definition of "property damage" in the policy before it. The court ultimately followed the rationale in those cases. However, the *Coulter* court also discussed *American Family Assurance Co.* in some detail. The court's reasons for rejecting the rationale of that case provide guidance.

The *Coulter* court first questioned the *American Family Assurance Co.* court's reliance on the 1973 revision of the CGL policy. The *Coulter* court noted that the 1973 revision defined "property damage" as either "(1) 'physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom;' or (2) 'loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.' [Citation.]" *Coulter*, 934 F. Supp. at 1120. After further noting that *American Home Assurance Co.* cited the revision but advocated an exception to the language requiring a physical injury or damage to accompany the loss of use damages, the *Coulter* court stated as follows:

"The court, however, fails to see how the 1973 revision lends itself to an interpretation that loss of use damages unaccompanied by physical damage or injury are covered as 'property damage,' where the second prong of the CGL definition is not given as an alternative to the first prong. Clearly, the second prong was added in 1973 to cover loss of use damages to tangible property that are unaccompanied by physical damage or destruction. Thus, because the drafters found a second prong was necessary for loss of use damages unaccompanied by physical damage, the first prong defining property damage as 'physical injury to or destruction of tangible property ..., including loss of use thereof at any time resulting therefrom' must require loss of use damages to be accompanied by physical injury or destruction." *Coulter*, 934 F. Supp. at 1121.

The policy in *Coulter* resembled the first prong of the CGL definition and did not provide the alternative definition for loss of use damages unaccompanied by physical damage. The *Coulter* court concluded that the decisions in *Ehlers* and *Dixon* advocated a more logical approach to analyzing the issue. Construing the language as a whole and giving the words their ordinary meaning, the court determined that the policy's definition of "property damage" was not susceptible to two interpretations, and held that there was no coverage because there were no allegations that the loss of use of tangible property was accompanied by physical damage or destruction. *Coulter*, 934 F. Supp. at 1122.

Finally, in *Continental Insurance Co. v. Bones*, 596 N.W.2d 552 (Iowa 1999), the insureds were sued for their refusal to honor a guarantee, which had resulted in the eviction of a tenant. The insurance policy at issue defined property damage as " 'physical injury to or destruction of real property or tangible personal property *including loss of use of the property.*' (Emphasis added.)" *Bones*, 596 N.W.2d at 556. The insureds claimed that the tenant's eviction from the premises resulted in his loss of use of the real estate, and therefore, there was an allegation of property damage for which the policy provided coverage.

Noting that this was a case of first impression, the Iowa Supreme Court reviewed prior decisions from other jurisdictions, including *Coulter, Gibson, Ehlers* and *American Home Assurance Co.* The court rejected the reasoning in *Gibson*, stating as follows:

> "The Maine court's analysis was very abbreviated; without any discussion of the policy language, the court merely cited as support for its holding the general principle that policies of insurance are interpreted ' "most strongly" against the insurer.' [Citation.] Unless there are two reasonable meanings from which to choose, however, the rule that a contract must be construed against the party who drafted it does not come into play. [Citations.] The Maine court failed to explain why the interpretation it adopted was a reasonable meaning based upon the language of the policy. [Citation.]" *Bones*, 596 N.W.2d at 558.

The *Bones* court also criticized the decision in *American Home Assurance Co.* for that court's reliance on the differences in the language of the standard insurance form and the abbreviated form used in that case. The *Bones* court pointed out that the difference in the language was important only if the difference gave rise to a contrary, reasonable interpretation. The *Bones* court concluded that the alternative interpretation was neither reasonable nor consistent with the policy language.

In accord with *Ehlers*, the *Bones* court concluded that damages for loss of use of tangible property were covered by the policy in that case only if the property had been physically injured or destroyed.

The definition of "property damage" in the case before us is slightly different from the cases relied on by the parties. The definition in the present case omits the phrases found in other policies in the cases cited, such as "this property" or "that property" or "thereof" which follow immediately "including loss of use." However, in common with *Bones, Coulter, Ehlers* and *Dixon*, the definition of "property damage" in this case does not provide an alternative defini-

tion for loss of use damages unaccompanied by physical damage.[2] Therefore, we are unpersuaded by the analysis in *American Home Assurance Co.*

We also reject the analysis provided by the *Gibson* court. In *Gibson*, the court stated that it "interpreted a standard policy of insurance, however, 'most strongly' against the insurer. [Citation.]" *Gibson*, 673 A.2d at 1353.[3] However, the words in an insurance policy will be construed in favor of the insured and against the insurer that drafted the policy if the words are susceptible of more than one reasonable interpretation rendering them ambiguous. *Outboard Marine Corp.*, 154 Ill. 2d at 108-09, 607 N.E.2d at 1217. Otherwise, courts will afford the words in the policy their plain, ordinary and popular meaning. *Crum & Forster*, 156 Ill. 2d at 391, 620 N.E.2d at 1078.

Despite the differences in the policy language, we agree that the analysis provided in *Coulter, Bones, Ehlers* and *Dixon* is not only logical in a grammatical sense but is consistent with the changes made in the CGL policies regarding the definition of " 'property damage.' " *Coulter*, 934 F. Supp. at 1122.

■ From our examination of the definition of "property damage" set forth in the policy in this case, we determine that it is not susceptible to more than one *reasonable* interpretation. In the absence of any ambiguity and affording the words their plain, ordinary and popular meaning, we conclude that there can be no coverage for the loss of use of tangible property unaccompanied by physical damage or destruction.

In the absence of any allegations in the Association's counterclaim that the loss of use of the hot water in this case was accompanied by physical damage or destruction, there is no coverage for the Association's claims against the plaintiff, and therefore, the defendant had no duty to defend the plaintiff. See *Lexmark International, Inc. v.*

---

[2]For an example of a policy containing the alternative definition, see *Bituminous Casualty Corp. v. Gust K. Newberg Construction Co.*, 218 Ill. App. 3d 956, 960, 578 N.E.2d 1003, 1006 (1991).

[3]Both *Outboard Marine Corp.* and the case the *Gibson* court relied on, *Massachusetts Bay Insurance Co. v. Ferraiolo Construction Co.*, 584 A.2d 608 (Me. 1990), noted that the reason behind the construction of policy language against the insurer was there was so little bargaining power and the insurer has control in the drafting process. However, like Illinois courts, the Maine court in *Ferraiolo Construction Co.* also required ambiguous terms before construing policy language against an insurer. The *Gibson* court did not identify any ambiguous terms before employing the rule against the insurer in that case.

*Transportation Insurance Co.*, 327 Ill. App. 3d 128, 142, 761 N.E.2d 1214, 1226 (2001).

The plaintiff then raises the argument that the defendant's failure to defend him under a reservation of rights or to file a declaratory judgment action to determine its obligations to the plaintiff under its policy estops the defendant from raising any coverage defenses.

■ Where an insurer takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend, an insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150, 708 N.E.2d 1122, 1134-35 (1999). If the insurer fails to take either of these steps and is later found to have wrongly denied coverage, the insurer is estopped from raising policy defenses to coverage. *Ehlco Liquidating Trust*, 186 Ill. 2d at 150-51, 708 N.E.2d at 1135. However, the application of the estoppel doctrine is not appropriate if the insurer had no duty to defend or if the insurer's duty to defend was not properly triggered. *Ehlco Liquidating Trust*, 186 Ill. 2d at 151, 708 N.E.2d at 1135. These circumstances include where, when the policy and the complaint are compared, there is clearly no coverage or potential for coverage. *Ehlco Liquidating Trust*, 186 Ill. 2d at 151, 708 N.E.2d at 1135.

■ In this case, given the absence of coverage, there was no duty to defend, and the defendant was not estopped from raising its coverage defenses.

Since the policy in this case requires both "property damage" and an "occurrence" before coverage exists, our determination that there was no "property damage" in this case alleviates the need to determine whether there was an "occurrence" under the terms of the policy.

We conclude that the trial court did not err in granting the defendant's motions for partial summary judgment. As we have determined that there was no duty to defend, we need not address whether the trial court erred in dismissing count II of the complaint, alleging a violation of section 155 of the Insurance Code (215 ILCS 5/155 (West 2000)).

### IV. Denial of Discovery

### A. Standard of Review

■ A reviewing court will not disturb a trial court's ruling on discovery matters unless there is a manifest abuse of discretion. *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 567, 734 N.E.2d 50, 62 (2000).

## B. Discussion

The plaintiff contends that the circuit court erred when it granted partial summary judgment to the defendant without ruling on his motion to compel discovery.

The plaintiff argues that his discovery requests were designed to discover documents and information related to the defendant's decision to deny coverage and specifically requested production of documents generated by the defendant's claims adjusters in the handling of the plaintiff's claims as well as the documents the defendant relied on in denying coverage. The plaintiff submits that the circuit court's action severely prejudiced him in his defense of the defendant's motion for partial summary judgment.

■ The general rule is that " 'it is only the allegations in the underlying complaint, considered in the context of the relevant policy provisions, which should determine whether an insurer owes a duty to defend an action brought against an insured.' [Citations.]" *Lexmark International, Inc.*, 327 Ill. App. 3d at 136, 761 N.E.2d at 1221. However, in the insurance context, generally, extrinsic facts, gathered in the discovery process, may be considered in determining whether a duty to defend is shown as long as they do not bear upon issues in the underlying litigation. *Atlantic Mutual Insurance Co.*, 315 Ill. App. 3d at 567, 734 N.E.2d at 62.

In *Atlantic Mutual Insurance Co.*, the court relied on *Millers Mutual Insurance Ass'n of Illinois v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 552 N.E.2d 254 (1989). In that case, the trial court found the duty to defend despite the insurance company's production of an affidavit in response to a motion for summary judgment which showed the existence of facts establishing an exclusion under the policy.

On review, the court determined that the allegations of the underlying complaint, the terms of the policy and the affidavit were all relevant in determining whether a duty to defend existed, relying on the decision in *Fidelity & Casualty Co. of New York v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 461 N.E.2d 471 (1983). In that case, the court held that the trial court could properly consider extrinsic evidence of the nature of services performed by an engineering firm to determine if the services were of an entirely consulting nature, where the policy excluded coverage for liability arising from consulting services.

■ The defendant points out that in *Eljer Manufacturing, Inc.*, our supreme court held that where the words of the policy are unambiguous, it is unnecessary for this court to consider extrinsic evidence of the policies' purported meaning. *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 301, 757 N.E.2d at 496. Nonetheless, the plaintiff

asserts that the meaning, interpretation, custom and usage of policy terms are discoverable without any initial showing of ambiguity, relying on *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 687 N.E.2d 72 (1997). However, in *Eljer Manufacturing, Inc.*, the court rejected the policyholders' argument that the decision in *Koloms* required the court to examine the relevant insurance industry drafting history of the definition of "property damage." *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 300-01, 757 N.E.2d at 495-96.

Supreme Court Rule 201(b)(1) allows a party to obtain by discovery full disclosure regarding any relevant matter, even where the discovery " 'relates to the claim or defense of the party seeking disclosure.' " *Yuretich v. Sole*, 259 Ill. App. 3d 311, 317, 631 N.E.2d 767, 772 (1994), quoting 166 Ill. 2d R. 201(b)(1). A discovery request may properly be quashed where the trial court has before it sufficient information upon which to decide the defendant's motion to dismiss. *Yuretich*, 259 Ill. App. 3d at 317, 631 N.E.2d at 772. However, a trial court should not refuse a discovery request and grant a motion to dismiss where it reasonably appears discovery might assist the party resisting the motion. *Yuretich*, 259 Ill. App. 3d at 317, 631 N.E.2d at 772.

A trial court is afforded great latitude in ruling on matters of discovery. *Atlantic Mutual Insurance Co.*, 315 Ill. App. 3d at 567, 734 N.E.2d at 62. The trial court will be deemed to have abused its discretion only where its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20, 743 N.E.2d 126, 138 (2000). The decision in this case turned on the meaning of policy terms that were unambiguous, and therefore, the court was required to give them their plain and ordinary meaning, regardless of what extrinsic evidence the plaintiff's discovery requests might have produced. Therefore, the failure of the circuit court to order compliance with the plaintiff's discovery requests prior to ruling on the defendant's motion for partial summary judgment was not arbitrary or unreasonable.

We conclude that the circuit court did not abuse its discretion when it ruled on the defendant's motion for summary judgment without compelling the defendant to answer the plaintiff's discovery requests.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN and WOLFSON, JJ., concur.