# Illinois Official Reports

## Appellate Court

---

*James River Insurance Co. v. TimCal, Inc.*, **2017 IL App (1st) 162116**

---

| | |
|---|---|
| Appellate Court Caption | JAMES RIVER INSURANCE COMPANY, Plaintiff-Appellee, v. TIMCAL, INC., Defendant, and FIDELITY NATIONAL PROPERTY & CASUALTY INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-16-2116 |
| Filed | June 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-24611; the Hon. Rita M. Novak, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Sudekum, Cassidy & Shulruff, Chtrd., of Chicago (Frederick J. Sudekum III and Florence M. Schumacher, of counsel), for appellant.<br><br>SmithAmundsen LLC, of Chicago (Michael Resis, Timothy J. Fagan, and Britta A. Sahlstrom, of counsel), for appellee. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Justices Pierce and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case involves an insurer's duty to defend or indemnify an insurance agent for negligent placement of insurance coverage that allegedly caused another insurer to incur damages. In July 2012, TimCal, Inc., an insurance agent affiliated with Geico Direct Representatives, received from Fidelity National Property & Casualty Insurance Company a letter, charging TimCal with breach of its duties as an insurance agent and informing TimCal that Fidelity would seek to recover damages. TimCal did not inform its professional liability insurer, James River Insurance Company (James River), about the claim until April 2013. James River filed a complaint against TimCal and Fidelity, seeking a judgment declaring that it had no duty to defend or indemnify TimCal because TimCal failed to provide timely notice of Fidelity's claim to James River. The circuit court granted James River's motion for summary judgment.

¶ 2     In this appeal, Fidelity argues that the court should not have granted James River's motion for summary judgment because (1) TimCal might have timely told an insurance agent about Fidelity's claim, (2) the July 2012 letter Fidelity sent to TimCal might not count as a claim, and (3) the professional liability insurance policy might allow the April 2013 notice as timely due to the renewal of the policy. We find no ambiguity in the pertinent policy terms, and the circuit court correctly applied the policy to the facts in this case. We affirm the circuit court's judgment in favor of James River.

¶ 3                                    BACKGROUND

¶ 4     In 2011, James River issued a professional liability insurance policy to Geico Direct Representatives. Under the policy, James River promised to provide coverage when an insurance agent affiliated with Geico Direct made an error in selling an insurance policy, and the error harmed either the insurance purchaser or the insurance seller. Geico renewed the James River policy in 2012. In December 2011, TimCal arranged the sale to Dwayne Swimley of homeowner's insurance from Fidelity. On April 5, 2012, a fire severely damaged Swimley's home. Fidelity paid Swimley's claim.

¶ 5     Fidelity sent to TimCal a letter dated July 9, 2012, saying:

> "The Swimley residence was constructed *** as a single family residence and was subsequently remodeled so that the second floor contained a separate apartment, complete with kitchen. *** At the time he applied for insurance through TimCal, Swimley had 4 tenants or roomers residing at the insured premises. ***
>
> TimCal violated the terms of the 'Independent Producer Agreement' between GEICO Insurance Agency, Inc. and us *** by submitting an application containing inaccurate information for a risk that did not qualify for insurance coverage with us. Specifically, Question 26 of the application states, 'Are there any roommates or bo[a]rders in the home and/or is the home used as a rooming or boarding house?' [TimCal's employee] McGreevy answered this question, 'No.' Similarly, Questions 6 and 7 relate to whether the Dwelling was originally constructed as a Single Family residence but later converted to a Multi-Family structure and whether any unit in the structure is occupied by more than one family. McGreevy answered 'No' [to] both of these questions.

*** TimCal did not properly employ the *** website *** which was designed to ensure that the proper information was collected for the application. *** [The method] that McGreevy utilized does not address the subjects covered by questions 26, 6 and 7, which likely resulted in McGreevy providing inaccurate information on those subjects.

Had we known that the residence actually contained two separate living units and four tenants, we would not have extended coverage for the residence. As a result of McGreevy's violation of the Independent Producer Agreement *** we have been damaged in the amount it will be required to pay Swimley for his claim for damages to the residence, which is presently reserved at $576,500.00.

This letter is intended to place you on notice that we will seek to recover these damages from you. In the event that you have errors and omissions insurance coverage which potentially covers this loss, we suggest that you forward a copy of this letter to you insurer."

¶ 6    On April 3, 2013, an employee of TimCal sent an email to a claims manager who worked for James River. The TimCal employee said, "my company has our E & O through you. I have a few questions ***. I was given your contact information from my insurance broker. This is a claims related question."

¶ 7    Fidelity sent to James River a letter dated April 23, 2013, repeating the statements from its letter to TimCal from July 2012 concerning the inaccurate information TimCal sent to Fidelity. Fidelity changed the ending of the letter to say,

"we have been damaged in the amount it will be required to pay Swimley for his claim for damages to the residence, which is presently $497,086.52 ACV.

This letter is intended to place you on notice that we are seeking to recover these damages from TimCal Inc. under your errors and omissions insurance coverage."

¶ 8    In October 2013, James River filed a complaint against TimCal and Fidelity, asking the court to enter a judgment declaring that James River had no duty to defend or indemnify TimCal in the anticipated lawsuit from Fidelity, due to lack of timely notice. Fidelity filed the expected complaint against TimCal on April 2, 2014. Fidelity sought to recover "an amount in excess of $400,000" that Fidelity paid on Swimley's claim.

¶ 9    In James River's declaratory judgment action, Fidelity filed interrogatories and document requests related to the drafting history of the insurance policy James River sold to Geico. James River filed a motion for a protective order, asking the court to bar Fidelity's requests for the drafting history and James River's proprietary business information. The circuit court granted James River's request for a protective order. Fidelity never obtained documents or other discovery related to the drafting history of the policy.

¶ 10    James River moved for summary judgment on the complaint. It supported the motion with the affidavit of the claims manager assigned to TimCal's claim. The claims manager said that he first received notice of Fidelity's claim against TimCal by email on April 3, 2013. A claims specialist who kept the records of James River's interactions with TimCal also asserted that James River received no notice regarding Fidelity's claim before April 3, 2013.

¶ 11    James River also appended to the motion copies of the two policies it issued to Geico in 2011 and 2012. The first policy provided:

***

THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. CLAIMS MUST FIRST BE MADE AGAINST THE INSURED DURING THE POLICY PERIOD AND MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF EXERCISED. ***

*** POLICY PERIOD: From: 10/01/2011 To: 10/01/2012

* * *

*** We will pay on behalf of the 'Insured' those sums in excess of the deductible the 'Insured' becomes legally obligated to pay as 'Damages' and 'Claims Expenses' because of a 'Claim' first made against the 'Insured' and reported to us in writing during the 'Policy Period' by reason of a 'Wrongful Act' in the performance of or failure to perform 'Professional Services' by the 'Insured' or by any other person or entity for whom the 'Insured' is legally liable. ***

* * *

*** 'Claim' means a written demand for monetary damages arising out of or resulting from the performing or failure to perform 'Professional Services'.

* * *

*** 'Policy Period' means the period of time shown in the Declarations.

* * *

*** Notice of 'Claims'

As a condition precedent to our obligations under this Policy, you shall give written notice to us as soon as practicable, but in no event later than 60 days after the end of the 'Policy Period' of any 'Claim' made against you. ***

* * *

In the event of cancellation or non renewal of this Policy, *** you shall have the right to an Extended Reporting Period as follows:

*** Coverage *** shall automatically continue for a period of sixty (60) days following the effective date of such cancellation or non renewal ***.

*** You shall have the right, upon payment of the additional premium *** to an extension of the coverage *** for the term set forth in the Declarations following the effective date of such cancellation or non renewal."

¶ 12    The second policy closely matched the first policy, except that it covered the policy period from 10/01/2012 to 10/01/2013. The second policy provides:

"This Policy does not apply to any Claim against the Insured *** [b]ased on or directly or indirectly arising from *** [a] professional service rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the professional service could give rise to a claim."

¶ 13    In its answer to the complaint, Fidelity said it lacked sufficient information to admit or deny James River's allegation that TimCal first gave James River notice of Fidelity's claim on April 3, 2013.

¶ 14    The circuit court agreed with James River's assertion that the first policy provided no coverage because TimCal failed to notify James River of the claim during the October 1, 2011, to October 1, 2012, policy period, and the second policy, which covered October 1, 2012, to October 1, 2013, provided no coverage because TimCal knew of the claim by July 9, 2012, before the policy period began. The circuit court granted James River's motion for summary judgment. Fidelity now appeals.

¶ 15                                    ANALYSIS

¶ 16    Fidelity argues on appeal that a material issue of fact remains as to when TimCal first reported the claim to James River and that both of James River's policies include ambiguities that make summary judgment improper. Fidelity finds ambiguity (1) in the application of the term "Claim" to the letter it sent to TimCal in July 2012, (2) in the term "Extended Reporting Period" in the first policy, and (3) in the term "effective date of the Policy" in the second policy. Fidelity also contends that, due to the ambiguities, the circuit court should have permitted Fidelity to discover the drafting history of the policies. We review the order for summary judgment *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 17                                   First Notice

¶ 18    James River supported its motion for summary judgment with two affidavits from James River employees, who explained their responsibilities in connection with TimCal's claim. They averred that James River first received notice of Fidelity's claim against TimCal on April 3, 2013. Fidelity argues that this evidence leaves an unresolved issue of fact because TimCal might have provided timely notice to an insurance agency that might have acted as James River's apparent or actual agent, and the insurance agency might have breached its duties to James River by failing to relay to James River the information the agent might have received from TimCal about Fidelity's claim against TimCal. Fidelity presented no affidavits or other evidence that could support a finding that its string of possibilities actually occurred. Fidelity admitted in its answer to the complaint that it had no evidence to either affirm or deny James River's allegation that it first received notice of Fidelity's claim against TimCal on April 3, 2013.

¶ 19    A party who opposes a motion for summary judgment may rely on reasonable inferences from the record to show that a material issue of fact remains unresolved. *Gehrman v. Zajac*, 34 Ill. App. 3d 164, 166 (1975). However, "the court need not strain to adduce some remote factual possibility that will defeat the motion." *Erasmus v. Chicago Housing Authority*, 86 Ill. App. 3d 142, 145 (1980). Fidelity admitted that it had no evidence from which a jury could conclude that TimCal provided notice prior to April 3, 2013. On this barren record, we find no triable issue as to when TimCal first notified James River of Fidelity's claim.

¶ 20                                      Claim

¶ 21    Fidelity argues that the term "Claim" in the James River policies applies ambiguously to the facts of this case, and we should construe the term to apply only to the letter Fidelity sent to James River on April 23, 2013, and not to the letter Fidelity sent to TimCal on July 9, 2012.

¶ 22    When courts construe insurance policies,

"our primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language. [Citation.] If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy. [Citation.] Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation. *** [O]nly reasonable interpretations will be considered. [Citation.] Thus, we will not strain to find an ambiguity where none exists. [Citation.] Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

¶ 23    The James River policies define a claim as "a written demand for monetary damages." Fidelity argues that we should not consider the letter of July 9, 2012, a claim because Fidelity did not demand a specific dollar amount of compensation. James River cited several cases in which courts held that demands similar to the demand in Fidelity's July 2012 letter counted as claims, despite the lack of a specific dollar amount claimed. See *Berry v. St. Paul Fire & Marine Insurance Co.*, 70 F.3d 981 (8th Cir. 1995); *Rentmeester v. Wisconsin Lawyers Mutual Insurance Co.*, 473 N.W.2d 160 (Wis. 1991); *Herron v. Schutz Foss Architects*, 935 P.2d 1104 (Mont. 1997); *Paradigm Insurance Co. v. P&C Insurance Systems, Inc.*, 747 So. 2d 1040 (Fla. Dist. Ct. App. 2000). Fidelity asks us not to follow the cases James River cites because the insurance policies at issue in all of those cases defined "claim" broadly as "a demand in which damages are alleged" (*Berry*, 70 F.3d at 981) or as "a demand for money or services" (*Rentmeester*, 473 N.W.2d at 163; *Herron*, 935 P.2d at 1107; *Paradigm*, 747 So. 2d at 1041).

¶ 24    Our research uncovered one case interpreting a policy with the language used here. In *Precis, Inc. v. Federal Insurance Co.*, 184 F. App'x 439 (5th Cir. 2006), the claimant, Kirk, sent a letter to Precis in December 2002, demanding compensation for damages that resulted from Precis's alleged misconduct. Kirk said that the damages exceeded $1.5 million. The policy from Federal covering Precis defined a "claim" as "a written demand for monetary damages." *Precis*, 184 F. App'x at 441. The *Precis* court said, "[t]he fact that Kirk does not propose a specific amount for settlement does not mean that the letter is not a demand for money. We agree with the district court that the December 2002 letters were, as a matter of law, claims as defined in *** the Federal *** polic[y]." *Precis*, 184 F. App'x at 441.

¶ 25    In the letter of July 9, 2012, Fidelity demanded payment of monetary damages, even though it did not specify a settlement amount or its total damages. The term "Claim" in the policies James River issued to Geico applies unambiguously to the letter Fidelity sent on July 9, 2012.

¶ 26                                        Timely Notice

¶ 27    Next, Fidelity finds ambiguity in the policies' requirement that TimCal had an obligation to provide notice of the claim during the policy period in which it received the claim. Both policies cover damages payable for claims "first made against the 'Insured' and reported to us in writing during the 'Policy Period.' " The policies expressly define "Policy Period" as "the period of time shown in the Declarations." The declarations of the first policy show a policy period of October 1, 2011, to October 1, 2012, and the declarations of the second policy show a policy period of October 1, 2012, to October 1, 2013.

¶ 28    We find no ambiguity in the application of the terms of the policies to the claims here. Fidelity sent a written claim against TimCal to TimCal on July 9, 2012, within the policy period of the first policy, and TimCal did not report the claim to James River until April 3, 2013, long after the end of the policy period. The provisions for extended reporting periods do not apply because the parties neither cancelled nor failed to renew the policies.

¶ 29    Fidelity argues that the policy extends the reporting period indefinitely, as long as Geico continued to renew the policy. The court in *CheckRite Ltd. v. Illinois National Insurance Co.*, 95 F. Supp. 2d 180, 194 (S.D.N.Y. 2000), explained why renewals cannot affect the reporting period for claims made and reported policies like the ones James River issued to Geico:

> "It must be remembered that the reporting period defines coverage under a claims-made policy. To read an 'inherent' extended reporting period into a renewal policy would 'creat[e] a long [and unbargained-for] "tail" of liability exposure, the avoidance of which forms the conceptual framework for claims made coverage in the first instance.' [*National Union Fire Insurance Co. of Pittsburgh*] *v. Bauman*, No. 90 C 0340, 1992 WL 1738, at *10 (N.D. Ill. Jan. 2, 1992). This conceptual framework applies where a policy is renewed, as well as when it is not, since each policy year represents an agreement as to a specific period during which claims made and reported will be covered.

> Although no New York cases have been cited on this issue, most courts that have confronted it have concluded that a renewal does not extend the reporting period for claims made during the earlier policy period. [Citations.] It has been concluded that such a rule is consistent with the rationale underlying claims made insurance and the reasonable expectations of the parties to such policies." *CheckRite*, 95 F. Supp. 2d at 194.

¶ 30    We agree and hold that TimCal unambiguously failed to report the claim to James River during the policy period in which Fidelity made the claim. Therefore, neither of the policies James River issued to Geico provides coverage for the claim. We note that, apart from the failure to report the claim during the policy period in which Fidelity made the claim, TimCal also failed to report the claim "as soon as practicable, but in no event later than 60 days after the end of the 'Policy Period' of any 'Claim' made against you," as the policies required. TimCal received the claim in July 2012, and failed to report it for nine months. Neither TimCal nor Fidelity has suggested any excuse for the delay. Because TimCal failed to report the claim "as soon as practicable," James River has no duty to defend or indemnify TimCal for the claim. See *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 237-38 (1983); *Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.*, 70 Ill. App. 3d 296, 300 (1979).

¶ 31                                                    Discovery

¶ 32    Finally, Fidelity argues that the circuit court should have ordered James River to produce its documents detailing the drafting history of the policies. The appellate court will not disturb the circuit court's ruling on discovery motions unless the circuit court abused its discretion. *Mutlu v. State Farm Fire & Casualty Co.*, 337 Ill. App. 3d 420, 434 (2003). Here, as in *Mutlu*, "The decision *** turned on the meaning of policy terms that were unambiguous, and therefore, the court was required to give them their plain and ordinary meaning, regardless of what extrinsic evidence the plaintiff's discovery requests might have produced. Therefore, the failure of the circuit court to order compliance with the plaintiff's discovery requests prior to

- 7 -

ruling on the defendant's motion for partial summary judgment was not arbitrary or unreasonable." *Mutlu*, 337 Ill. App. 3d at 434; see also *Missouri Pacific R.R. Co. v. American Re-Insurance Co.*, 286 Ill. App. 3d 129, 139 (1996).

¶ 33                                    CONCLUSION

¶ 34      The letter Fidelity sent to TimCal in July 2012 unambiguously qualifies as a claim within the meaning of James River's insurance policy. Because TimCal did not notify James River of the claim until April 2013, neither the 2011-12 policy nor the 2012-13 policy provides coverage for the claim. Documents detailing the drafting history of the policies cannot affect the court's interpretation of the unambiguous provisions of the policy, and therefore the circuit court did not abuse its discretion when it granted James River's motion to protect it from the pointless discovery requests. Accordingly, we affirm the circuit court's judgment.

¶ 35      Affirmed.